# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT H. ALAND,<br><br>   Plaintiff,<br><br>      v.<br><br>DIRK KEMPTHORNE, et al.,<br><br>   Defendants. | No. 07-CV-4358<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

This matter is before the Court on Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), filed by H. Dale Hall, U.S. Fish and Wildlife Service Director, and Dirk Kempthorne, Secretary of the Interior (collectively "Federal Defendants") on September 4, 2007. Defendants seek to transfer the case to the District of Idaho for the sake of judicial economy, convenience, and so the present case may be coordinated with a related case pending in the United States District Court for the District of Idaho. Plaintiff filed an objection to the Motion to Transfer and Defendants filed a reply in support of their Motion. I allowed Plaintiff to file a short sur-reply, which I have read and considered. For the following reasons, Defendants' motion is granted and the case shall be transferred to the District of Idaho.

### II. Background

This cause of action arises out of a challenge to the U.S. Fish and Wildlife Service's ("FWS") grizzly bear Final Rule ("Final Rule"). 72 Fed. Reg. 14866 et seq. (Mar. 29, 2007) (to be codified at 50 C.F.R. pt. 17). The Final Rule, effective April 30, 2007, designated grizzly

bears in the Greater Yellowstone Area ("GYA") and surrounding area as a distinct population segment ("DPS") pursuant to 16 U.S.C. § 1532(16) and thereby removed that DPS from the list of threatened and endangered species under the Endangered Species Act of 1973 ("ESA"), as set forth in 50 C.F.R. § 17.11. On August 2, 2007, Plaintiff filed this suit for declaratory and preliminary and permanent injunctive relief under the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(1), and the Administrative Procedure Act ("APA"), 5 U.S.C §§ 551-706, seeking to declare invalid and enjoin the implementation of the Final Rule.

Plaintiff, who resides in Illinois, regularly enjoys visits to the GYA, including areas known to be inhabited by grizzly bears. Between 1998 and the present, Plaintiff has visited the GYA on almost a monthly basis, staying for six to ten days or more at a time. Over the past few years, Plaintiff has been active in seeking to protect and preserve the habitat for the grizzly bears through financial and physical endeavors. Plaintiff submitted initial written comments in February 2006 to FWS in opposition to the proposed de-listing of the grizzly bears, and he supplemented those initial comments throughout 2006 and 2007. Following the issuance of the Final Rule, which removed the DPS of grizzly bears in the GYA from the list of threatened and endangered species under the ESA, Plaintiff filed this lawsuit complaining: (1) FWS erroneously concluded that grizzly bears have recovered in the GYA; (2) FWS's designation of the grizzly bears as a DPS violated the ESA and FWS policy; (3) FWS failed adequately to consider the present or threatened destruction, modification or curtailment of grizzly bears' habitat or range in the GYA; (4) FWS failed adequately to consider overutilization of grizzly bears in the GYA; (5) FWS failed adequately to consider disease or predation that threatens grizzly bears in the GYA with extinction; (6) FWS failed adequately to consider the inadequacy of existing regulatory

mechanisms that threaten grizzly bears in the GYA with extinction; (7) FWS failed adequately to analyze other natural or manmade factors that threaten grizzly bears' continued existence in the GYA; (8) FWS might have erroneously and unlawfully used factors other than the best available scientific and commercial data to delist grizzly bears in the GYA; (9) peer review in the de-listing rulemaking was fundamentally flawed; (10) FWS erroneously and unlawfully failed to adhere to mandatory procedural requirements for de-listing grizzly bears in the GYA; (11) the public comment period was fundamentally flawed; and (12) grizzly bears in the GYA will suffer irreparable harm if they are allowed to be hunted beginning in Fall 2007.

On June 4, 2007, a number of environmental groups also filed a complaint for declaratory and injunctive relief challenging the Final Rule in the District of Idaho. *See Complaint for Declaratory and Injunctive Relief, Western Watersheds Project v. Servheen*, No. 07-cv-243 (Jun. 4, 2007). In *Western Watersheds*, the defendants include the two Federal Defendants named here, as well as Christopher Servheen, FWS's Grizzly Bear Recovery Coordinator, and the FWS itself (collectively "Idaho Defendants"). The Idaho Defendants filed their Answer on August 9, 2007. A number of parties are currently seeking either intervenor or *amicus* status in the District of Idaho litigation.[1] The Plaintiffs in *Western Watersheds* similarly challenge the FWS' designation of the GYA grizzly bears as a DPS and the Final Rule removing that DPS from the

---

[1] Federal Defendants point to at least five other parties who have moved to participate in the litigation. The Safari Club International moved to intervene as a party defendant on June 12, 2007. U.S. Sportsman's Alliance Foundation moved to file an amicus brief in support of Idaho Defendants' position on July 18, 2007. The State of Wyoming moved to intervene as a party defendant on August 2, 2007. According to the Federal Defendants, the State of Montana will also be filing a motion to intervene on its behalf, if it hasn't already done so. Additionally, the National Wildlife Federation moved to intervene on September 27, 2007, and that motion was denied by the Idaho court on October 31, 2007.

federal list of endangered and threatened wildlife. Both the Plaintiff here and the Plaintiffs in *Western Watersheds* seek a declaration that the FWS' Final Rule violates the ESA and/or the APA. Plaintiff(s) in both cases also seek to enjoin the FWS from designating the grizzly bears in the GYA as a DPS and from removing that DPS from the protected ESA list.

Federal Defendants filed their motion to transfer this case to the District of Idaho over concern that litigation on the merits of the Final Rule in two different forums could result in inconsistent orders. They also argue that litigation of the same Final Rule in two forums needlessly wastes judicial resources. And, they request transfer to the District of Idaho because *Western Watersheds* was filed there first.

**III. Standard**

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). Section 1404(a) places discretion with this court to adjudicate motions for transfer according to "individualized, case-by-case consideration of convenience and fairness." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The relevant factors the district court should consider are: the preference given to plaintiff's choice of forum; convenience of the parties, counsel, and witnesses; the location of the record; and the interest of justice. 15 Charles A. Wright, Arthur R. Miller & E. Cooper, *Federal Practice and Procedure* § 3848-54 (2d. ed. 1986). The language of § 1404(a) does not indicate the relative weight to be accorded to each factor. *Coffey*, 796 F.2d at 220 n.3.

## IV. Discussion

### A. Proper Venue

The threshold consideration in a Section 1404(a) motion is that there must be an "other district . . . where [the action] might have been brought." *See Van Dusen*, 376 U.S. at 616. Venue is proper in any judicial district in which: (1) a defendant in the action resides; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e) (governing venue in civil actions against federal officers and agencies). Neither party disputes that venue is proper in Illinois pursuant to § 1391(e)(3). However, venue may be proper in more than one district because, under § 1391(e)(2), "there may be several districts that qualify as a situs of such 'substantial' activities." David D. Siegel, *Commentary on 1988 and 1990 Revision of Section 1391*, 28 U.S.C.A. § 1391 (1993) at 9.

Federal Defendants argue that a substantial part of the events giving rise to the claims occurred in the District of Idaho because the geographic location of the GYA grizzly bear DPS includes eastern Idaho.[2] Also, the FWS held one of four open houses during the proposal period of the Final Rule in Idaho in order to collect and consider comments before issuing the final

---

[2]Federal Defendants also make two additional arguments in the venue portion of their reply motion: (1) Plaintiff's twelfth claim for relief seeks to invalidate the Final Rule, which in turn would require actions taken by the State of Idaho to enact new laws to protect the bears from hunting, and (2) courts recognize the importance of transferring ESA cases to a district in which the species is located. These arguments are viable, but they are more properly considered in the "interests of justice" prong of the venue analysis. I will consider them accordingly.

order. 70 Fed. Reg. at 69854.³ Plaintiff argues that these events do not fall within the ambit of what was intended by § 1391(e)(2) and suggests instead that the language "substantial part of the events or omissions" more readily certifies Washington, D.C. as a proper venue because that is where the head offices of Defendants' agencies are located and where Defendant Hall approved and signed the Final Rule.⁴

Because a "substantial part of the events giving rise" to Plaintiff claims occurred in Idaho, venue is proper in that district. 28 U.S.C. § 1391(e)(2); *see Nw. Forest Res. Council v. Babbitt*, 1994 WL 908586, at *2 (D.D.C. Apr. 13, 1994) (finding venue proper under § 1391(e) in Western District of Washington where population of marbled murrelets were located and where FWS maintained field offices that assisted in promulgating the challenged rule). The gravamen of Plaintiff's complaint is a concern for the continued viability of the DPS of grizzly bears located in the GYA. The area covered by the DPS boundaries encompasses eastern Idaho, southern Montana, and the northwest corner of Wyoming. A substantial portion of the DPS is located in the District of Idaho. Also, during the process of designating the boundaries of the DPS and eventually publishing the Final Rule, the FWS considered comments by those in and around the District of Idaho. The FWS based its findings on significant quantities of information gathered in and around the GYA because the material facts in this case are derived from that

---

³The open house in Idaho was held in Idaho Falls on January 12, 2006. Other open houses were held in Bozeman, Montana and Jackson, Wyoming. An open house and a public hearing was held in Jackson, Wyoming. 70 Fed. Reg. at 69854.

⁴I do not address whether or not Washington, D.C. is a proper venue for this case because neither party has requested me to do so.

location.  The nexus to Idaho is clear, and therefore I find that the District of Idaho qualifies as a proper venue under § 1391(e)(2).

### B.  Convenience

The convenience component of § 1404(a) invites me to consider the following five factors:  (1) the plaintiff's choice of forum; (2) conveniences for the parties; (3) conveniences for witnesses; (4) location of material events; and (5) location and ease of access to sources of proof. *Willis v. Hilton Hotels Corp.*, 2007 WL 611262, at *3 (N.D.Ill. Feb. 22, 2007).  Plaintiff's choice of forum is the Northern District of Illinois because he lives in a north suburb of Chicago and beginning in January 2008, he will teach a weekly class at a law school located in Chicago. However, while a "large measure of deference is due to the plaintiff's freedom to select his own forum[,] . . .this factor has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." *Chicago, Rock Island & Pac. RR. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (internal quotations omitted); *see also Ruppert v. Principal Life Ins. Co*, 2007 WL 2025233, at *5 (S.D. Ill., July 9, 2007) (quoting the same rule); *Heston v. Equifax Credit Info. Serv. LLC*, No. 03 C 2476, 2003 WL 22243986, at *1 (N.D.Ill. Sept. 26, 2003) (reasoning that plaintiff's failure to allege facts connecting her claims to the district where the plaintiff chose to sue "weighs in favor of transfer").  Just like in *Chicago, Rock Island*, this case involves "no controverted question which depends on any event occurring in the Northern District of Illinois.  Both parties must rely upon evidence of events entirely removed from [this] District." *Chicago, Rock Island*, 220 F.2d at 304.  Therefore, because there is no material connection between this District and the transactions underlying this case, I afford little deference to Plaintiff's choice of forum in the Northern District of Illinois.

7

The convenience of parties and witnesses does not militate strongly in favor of either the Northern District of Illinois or the District of Idaho. The Federal Defendants reside in the vicinity of Washington, D.C., and to the extent that they will also be litigating the *Western Watersheds* case in Idaho, that district is more convenient. I observe that Plaintiff's residence and teaching position in this District poses some inconvenience for him to travel to the District of Idaho, though since he tries this case pro se, his travel expenses are less. Further, the parties agree that this case will largely be decided on an administrative record and APA review record principles, meaning that neither of the parties will have to make extensive travels to Idaho. The electronic filing system allows parties to proceed with briefing without actually traveling to the courthouse. Also, the parties agree that a trial in this case is unlikely and the probability of calling witnesses is low, so the convenience of witnesses is not a salient issue either.[5]

The location of material events in this case and location of sources of proof indicate that Idaho is a slightly more convenient forum. Plaintiff contends that the "material events" giving rise to his cause of action were Federal Defendants' decision to delist the GYA grizzly bears and the signing of the Final Rule, which took place in Washington, D.C. While this is true, it does not affect the convenience equation for this court at all. Defendants contend that the location of the DPS of grizzly bears, which includes eastern Idaho, tips the scales of convenience in favor of Idaho, which it does. The administrative record and culminating Final Rule were based on research and data collected in the GYA, and the Plaintiff has already suggested that he may seek

---

[5]Both parties spend some time addressing the issue of convenience with respect to Defendants' attorneys. However, "the convenience of an attorney is not a factor in considering a motion to transfer venue," and thus I will not consider it. *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. , 2007 WL 1560212, at *5 n.3 (N.D.Ill. May 29, 2007) (internal quotation omitted).

permission to conduct limited discovery to supplement that record. Presumably at least part of the information sought, given the nature of Plaintiff's complaint, will be related to events that occurred in the GYA and conditions that affect the DPS at the center of this case. Also, to the extent that the FWS' administrative record with regard to the Final Rule is already being compiled and sent to the District of Idaho for the *Western Watersheds* case, that district is more convenient for the sources of proof in this case (although not by much because to the extent that record is stored electronically, copies of CDs or PDFs are easily made and distributed). Overall, because there is no material connection to this District and because the material facts are located in and around the GYA, the convenience analysis tips in favor of the District of Idaho.

### C. Interests of Justice

Lastly, and most significantly, § 1404(a) requires that I consider the interests of justice in this motion to transfer venue. The interests of justice is a "somewhat amorphous term" consisting of several variables including: (1) the speed of the proceeding; (2) the court's familiarity with applicable law; (3) the conservation of judicial resources; and (4) the relation of the community to the occurrence and the desirability of resolving the controversy in its locale. *Hawksbill Sea Turtle v. FEMA*, 939 F.Supp. 1, 4 (D.D.C. 1996); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Willis*, at \*3 (*citing IFC Credit Corp. v. Eastcom, Inc.*, 2005 WL 43159, \*2 (N.D.Ill. Jan. 7, 2005)); *see also* 15 Charles A. Wright, Arthur R. Miller & E. Cooper, *supra,* § 3854. "Amorphous though it may be, the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." *Hawksbill*, 939 F.Supp. at 4. The interests of justice includes both the interest of the parties as well as the interests of society in

general. *Chicago, Rock Island*, 220 F.2d at 304 (*citing United States v. National City Lines, Inc., D.C.*, 7 F.R.D. 393, 397, 402 (S.D.Cal. 1947)).

The most salient considerations under this prong given the circumstances presented here are the conservation of judicial resources and the relation of the community and desirability of resolving the controversy in its locale.[6] § 1404(a) was designed to prevent the "situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts." *Continental Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960). While the *Western Watersheds* case currently pending in the District of Idaho does not present *precisely* the same issues raised in this case, both cases essentially involve a challenge under the ESA and APA to the FWS' Final Rule regarding the DPS of grizzly bears in the GYA. *See Nw. Forest Res. Council*, 1994 WL 908586, at *3 (granting transfer of venue where two cases in different districts arose out of the same rule-making process and calling factual background and legal issues "similar and largely intertwined"). Not all of the claims in both cases are identical, but the amount of overlap is significant and the chance of conflicting orders is real. *Western Watersheds* was filed before this case, and several parties have already moved to intervene.

Finally, the local significance of the interests of the states which are a home to the DPS of grizzly bears cannot be ignored. The management of the grizzly bears is of critical importance to those states because those states will inherit the primary management responsibility of the grizzly bears if the Final Rule remains in effect. Those states have already spent a considerable amount of time and resources developing their state management plans, and thus this dispute more

---

[6]The speed of disposition and the court's familiarity with the applicable law are negligible factors in this case.

closely involves the interests of any of those states over those of Illinois. Therefore, the controversy over the FWS' rulemaking that labeled the population of grizzly bears in the GYA a DPS is more appropriately litigated in a court in Idaho, Wyoming, or Montana, where that DPS is found. In *Nw. Forest Res. Counsel*, the Court transferred a challenge under the ESA of the listing of the marbled murrelet from the District of Columbia to the Western District of Washington, where much of that bird's habitat is found. *Nw. Forest Res. Counsel*, 1994 WL 908586, at *4. An important consideration with regard to the interests of justice was the fact that "marbled murrelets do not inhabit land or water in – or anywhere near – the District of Columbia." *Id*. The same reasoning applies here and supports a transfer of venue to the District of Idaho.

## V. Conclusion

Venue for this action is proper in both the Northern District of Illinois and the District of Idaho. Although Plaintiff brought this action in the Northern District of Illinois, in light of all of the circumstances, the interests of justice and convenience of the parties sufficiently outweighs Plaintiff's right to choose the forum. Transfer of this action to the District of Idaho is appropriate. Accordingly, it is hereby ordered that Defendants' motion is granted, pursuant to 28 U.S.C.§ 1404(a). This action shall be transferred to the District of Idaho forthwith.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: December 11, 2007